```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Danny Williams,                  :

      Plaintiff,           :

   v.                            :   Case No. 2:08-cv-0063

                                            :   JUDGE WATSON

John Doe, et al.,
                                            :

      Defendants.

<u>REPORT AND RECOMMENDATION</u>

     Plaintiff, Danny Williams, a state prisoner, filed this action alleging various claims including deliberate indifference to his medical needs. He originally filed suit against Richard Gibson, Dr. Ratalt, named as a John Doe defendant, and Dr. John Roberts, also named as a John Doe defendant. His claims against Mr. Gibson were dismissed, and this case was transferred to this Court from the Western Division at Cincinnati, by order dated January 18, 2008. (Doc. #4). On April 17, 2008, Dr. Roberts filed a motion for summary judgment with respect to claim number five of the complaint which is the only remaining claim pending against him. For the following reasons, the Court will recommend that the motion for summary judgment be granted.

I.

     Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464

(1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

## II.

According to Mr. Williams's complaint, he suffered a broken leg on July 1, 2005. He underwent surgery at the Corrections Medical Center in Columbus and two titanium roads were inserted to hold torn ligaments. Mr. Williams claims that his surgeon, Dr. Gary D. [Bos], told him that the rods should be removed six to eight months following surgery. Mr. Williams states that at some point following surgery, an x-ray revealed that the titanium rods were broken. Mr. Williams contends that, when he was seen

by Dr. Roberts post-surgery, Dr. Roberts was aware of the broken rods but refused to remove them.  As a result, Mr. Williams claims he is in constant pain and has developed a severe limp.  He also asserts that he has severe pain in his lower hip and back area.  Mr. Williams seeks compensatory and punitive damages.

In support of his motion for summary judgment, Dr. Roberts has submitted an affidavit with Mr. Williams's consultation reports attached.  (Ex. 1).  Dr. Roberts also has submitted an authenticated copy of Mr. Williams's medical file from the Ross Correctional Institution (Ex. 2) as well as a copy of a medical presentation relating to syndesmosis screws (Ex. 3).

According to Dr. Roberts, he is an Associate Professor of Orthopedics and Director of Education at The Ohio State University and has been affiliated with the university since 1967.  Affidavit at ¶¶3-4.  Dr. Roberts states that he did not perform Mr. Williams's surgery but that he reviewed the surgery report and treated Mr. Williams twice on consultation requests from the Department of Rehabilitation and Correction.  Id. at ¶¶7, 9.  As explained by Dr. Roberts, Mr. Williams had a syndesmosis screw fixation of his left ankle.  Id. at ¶8.  This surgery, which repairs the separation of the tibia and fibula, involves the insertion of screws through the fibula and tibia.  Id.  Dr. Roberts first treated Mr. Williams forty-eight hours after the operation.  Id. at ¶10.  Dr. Roberts later treated Mr. Williams on March 30, 2006, approximately nine months after the surgery.  Id. at ¶11.

At the time of this second consultation with Dr. Roberts, the syndesmosis screws used to repair Mr. Williams's fracture had broken.  Affidavit at ¶12.  Dr. Roberts's position, based on his experience and knowledge is that the broken screws should not be removed.  Id.  According to Dr. Roberts, the broken screws do not cause pain to the patient and may allow for greater range of

3

motion so it is preferable to leave them in rather than subject a patient to the risks presented by an additional surgery. Id. As Dr. Roberts explains, the practice of leaving the broken screws in place is the standard of care in the medical community. Id.

In examining Mr. Williams's medical records (Ex. 2), Dr. Roberts notes that the January 10, 2006 x-ray of Mr. Williams's ankle shows that his fracture was healed. Affidavit at ¶13. This x-ray, along with x-rays of Mr. Williams's ankle taken on March 29, 2006 and October 12, 2006, reveal degenerative joint disease involving the tibiotalar joint. Id. Dr. Roberts opines that these degenerative changes are most likely the source of Mr. Williams's pain. Id.

In response to the motion for summary judgment, Mr. Williams has submitted a number of exhibits. Many of these documents were also provided by Dr. Roberts. However, in addition, Mr. Williams has provided an informal complaint resolution form dated June 1, 2006, relating to his ankle pain (Ex. 6) and a health services request dated January 9, 2006, also relating to his ankle pain (Ex. 30). Mr. Williams continues to assert that his surgeon told him that the screws needed to be removed six to eight months following surgery, that Dr. Roberts was aware of this, and that Dr. Roberts's refusal to remove the screws constitutes deliberate indifference in violation of the eighth amendment.

In reply, Dr. Roberts asserts that Mr. Williams at best is asserting a claim of medical negligence rather than one of deliberate indifference. Further, Dr. Roberts contends that Mr. Williams is asking this Court to second guess a medical opinion simply because he disagrees with the course of action.

### III.

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to

4

his or her health.  Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991).  This formulation has both a subjective and an objective component.  Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial."  Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately described as "deliberate indifference."  Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to implicate the Constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of an inmate's condition are frequently in dispute.  In evaluating such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain.  See Chance v. Armstrong, 143 F.3d 688, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811 F.Supp. 1221 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment.  See Napier v. Madison Co., Ky., 238 F.3d 739 (6th Cir. 2201).  In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical

condition is present.  Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element, in Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." Id. at 837.  Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion.  Id.  Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

IV.

As stated above, to establish an eighth amendment violation, Mr. Williams must demonstrate both a serious medical condition and Dr. Roberts's deliberate indifference to this condition. With respect to the first relevant inquiry - whether Mr. Williams has demonstrated a serious medical condition - there is no dispute that Mr. Williams has documented ankle pain.  Here,

however, the Court need not address whether this ankle pain constitutes a serious medical condition for eighth amendment purposes because, as the record stands, Mr. Williams cannot succeed on the second inquiry. That is, a reasonable trier of fact could not conclude that Dr. Roberts was deliberately indifferent to Mr. Williams's medical condition.

According to Dr. Roberts's affidavit, he treated Mr. Williams on two occasions - within forty-eight hours after surgery and then approximately nine months later. On the second occasion, Dr. Roberts did not recommend removal of the syndesmosis screws based on his knowledge and experience in the field of orthopedics. According to Dr. Roberts, leaving the screws in does not result in pain to the patient and is the recommended course of action and the standard of care in the medical community. Roberts Affidavit at ¶12.

Mr. Williams has not provided any evidentiary materials in response sufficient to raise a genuine issue of material fact regarding this issue. While Mr. Williams has provided copies of documents demonstrating his attempts to gain relief for his ankle pain, nothing in these documents provides any evidence of Dr. Roberts's subjective intent to cause Mr. Williams pain by failing to remove the screws. For example, Mr. Williams has not provided any information demonstrating that Dr. Roberts's actions fell below the acceptable standard of care in the medical community or that failure to remove the screws under the circumstances present here was likely to result in pain to Mr. Williams. Moreover, despite Mr. Williams's claim that his surgeon told him that the screws should be removed within six to eight months following surgery, he has provided no evidence of this. In fact, the surgeon's post operative report contains no such instructions. See Doc. 16-3, pp. 2-3, Doc. 18-3, pp. 1-2. Consequently, because Mr. Williams has failed to raise a genuine issue of

material fact, the Court will recommend that Dr. Roberts's motion for summary judgment be granted.

V.

Based upon the foregoing, it is recommended that the defendant John Roberts's motion for summary judgment (#16) be granted.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge